|  | Judge: | Christopher M. Alston |
|---|---|---|
|  | Chapter: | 7 |
|  | Hearing Date: | April 30, 2021 |
|  | Hearing Time: | 9:30 a.m. |
|  | Hearing Site: | Telephonic – Call in instructions below |
|  | Response Date: | April 23, 2020 |

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

In re:

SAMIA EL-MOSLIMANY

Debtor.

Case No. 18-14820-CMA

DECLARATION OF RIK JONES

Rik Jones declares under penalty of perjury under the laws of the State of Washington as follows:

1. I am a duly licensed real estate broker in the State of Washington and have been so licensed since July 19, 1989.

2. I completed a walk-thru and valuation of the real property located at 2655 SW 151st Place, Burien, Washington in late 2019.

3. The home is in the Seahurst neighborhood and is close to Puget Sound. It has winter views of the Sound but only territorial views in the summer. The home is 5,523 square feet and features 5 bedrooms, 5.75 bathrooms, 2 gas fireplaces, wood stove, and radiant floor heating. The debtor's daughter indicated that the residence was built in 2010; however, tax records reflect it was built in 1967. I have confirmed that they did a complete remodel in approximately 2010. Three of the bedrooms upstairs have decks, the lower-level bedroom has a ¾ bath and separate entrance. The home is well designed for a multi-generational family, or Airbnb which is appealing to more families, or a buyer looking to generate extra income.

DECLARATION OF NO CONFLICT
BY RIK JONES
page - 1 -

Wood & Jones, P.S.
303 N 67th St.
(206) 623-4382

Case 18-14820-CMA    Doc 150    Filed 04/09/21    Ent. 04/09/21 14:42:36    Pg. 1 of 6

4. I submitted a declaration in August of 2019 indicating that in my opinion, the value was between $1,150,000 - $1,200,000, and recommended a list price of $1,250,000.

5. It is my opinion that the current market value of the Property is $1,300,000 and could be more because of the lack of inventory. Seattle/King County saw property values increase by over 10% in March alone. Much of this is due to lack of inventory. In March 2021 there were 1,000 homes on the market, compared to 2,100 a year ago. This has led to multiple offers and bidding wars. For this reason, it is difficult to pinpoint current market values. As Realtors we can estimate values, but until a property goes on the market and gets full exposure of being listed on the NWMLS, market value has become a moving target. There is no indication that inventory will increase any time soon.

6. I estimate this Property would rent for between $4,000 - $5,000 per month.

7. I have reviewed the creditor list in both the Samia El-Moslimany and Ann Paxton El-Moslimany cases and I do not have a connection of which I am aware with either debtor, any creditor or any other party in interest, their respective attorneys or accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

8. I have previously worked with both Nancy James and Ron Brown, the duly appointed trustees in this case and Denice Moewes and Rory Livesey the Attorneys for the Trustees, in other bankruptcy cases and it is anticipated that it will continue.

9. I do not hold or represent an interest adverse to the estate held and I am a disinterested pursuant to 11 USC §101(14).

DECLARATION OF NO CONFLICT
BY RIK JONES
page - 2 -

Wood & Jones, P.S.
303 N 67th St.
(206) 623-4382

Case 18-14820-CMA    Doc 150    Filed 04/09/21    Ent. 04/09/21 14:42:36    Pg. 2 of 6

10. I have read Local Bankruptcy Rule 2016 in accordance with Local Bankruptcy Rule 2014.

Dated this 9th day of April 2021, at Seattle, Washington.

_____
Rik Jones

DECLARATION OF NO CONFLICT
BY RIK JONES
page - 3 -

Wood & Jones, P.S.
303 N 67th St.
(206) 623-4382

Case 18-14820-CMA    Doc 150    Filed 04/09/21    Ent. 04/09/21 14:42:36    Pg. 3 of 6

Form 1A
Exclusive Sale
Rev. 3/21
Page 1 of 3

EXCLUSIVE SALE AND LISTING AGREEMENT

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

_____ ("Seller") hereby grants to, 1
Seller                          Seller

RE/MAX Northwest Realtors _____ ("Firm") from date hereof until midnight of 2

 9/30/2021 _____ ("Listing Term"), the exclusive right to sell the real property ("the Property") 3

commonly known as 2655   Sw 151st Pl _____, City Burien _____, 4

County King _____, WA, Zip 98166 _____; and legally described on Exhibit A. 5

1. **DEFINITIONS.** (a) "MLS" means the Northwest Multiple Listing Service; and (b) "sell" includes a contract to sell; an exchange or contract to exchange; an option to purchase; and/or a lease with option to purchase.

2. **AGENCY/DUAL AGENCY.** Seller authorizes Firm to appoint Rik Jones _____ as Seller's Listing Broker. This Agreement creates an agency relationship with Listing Broker and any of Firm's brokers who supervise Listing Broker's performance as Seller's agent ("Supervising Broker"). No other brokers affiliated with Firm are agents of Seller, except to the extent that Firm, in its discretion, appoints other brokers to act on Seller's behalf as and when needed. If the Property is sold to a buyer represented by one of Firm's brokers other than Listing Broker ("Buyer's Broker"), Seller consents to any Supervising Broker, who also supervises Buyer's Broker, acting as a dual agent. If the Property is sold to a buyer who Listing Broker also represents, Seller consents to Listing Broker and Supervising Broker acting as dual agents. If any of Firm's brokers act as a dual agent, Firm shall be entitled to the entire commission payable under this Agreement plus any additional compensation Firm may have negotiated with the buyer. Seller consents to Firm receiving compensation from more than one party. Seller acknowledges receipt of the pamphlet entitled "The Law of Real Estate Agency."

3. **LIST DATE.** Firm shall submit this listing, including the Property information on the attached pages and photographs of the Property (collectively, "Listing Data"), to be published by MLS by 5:00 p.m. on _____ ("List Date"), which date shall not be more than 30 days from the effective date of the Agreement. Seller acknowledges that exposure of the Property to the open market through MLS will increase the likelihood that Seller will receive fair market value for the Property. Accordingly, prior to the List Date, Firm and Seller shall not promote or advertise the Property in any manner whatsoever, including, but not limited to yard or other signs, flyers, websites, e-mails, texts, mailers, magazines, newspapers, open houses, previews, showings, or tours.

4. **COMMISSION.** If during the Listing Term (a) Seller sells the Property and the buyer does not terminate the agreement prior to closing; or (b) after reasonable exposure of the Property to the market, Firm procures a buyer who is ready, willing, and able to purchase the Property on the terms in this Agreement and as set forth in the attached Listing Input Sheets incorporated herein by this reference, Seller will pay Firm a commission of (fill in one and strike the other) ✻5.0 % of the sales price, or $ xxxxxxxxxxxxxx ("Total Commission"). From the Total Commission, Firm will offer a cooperating member of MLS representing a buyer ("Buyer Brokerage Firm") a commission of (fill in one and strike the other) ✻2.5 % of the sales price, or $ xxxxxxxxxxxxxx. RCW 18.86.050(1)(e)(ii) provides that buyer's brokers are not required to show property as to which there is no written agreement to pay compensation to the buyer's broker.

   If Seller shall, within six months after the expiration of the Listing Term, sell the Property to any person to whose attention it was brought through the signs, advertising or other action of Firm, or on information secured directly or indirectly from or through Firm, during the Listing Term, Seller will pay Firm the above commission. Provided, that if Seller pays a commission to a member of MLS or a cooperating MLS in conjunction with a sale, the amount of commission payable to Firm shall be reduced by the amount paid to such other member(s). Provided further, that if Seller cancels this Agreement without legal cause, Seller may be liable for damages incurred by Firm as a result of such cancellation, regardless of whether Seller pays a commission to another MLS member. Buyer Brokerage Firm is an intended third party beneficiary of this Agreement.

5. **SHORT SALE / NO DISTRESSED HOME CONVEYANCE.** If the proceeds from the sale of the Property are insufficient to cover the Seller's costs at closing, Seller acknowledges that the decision by any beneficiary or mortgagee, or its assignees, to release its interest in the Property, for less than the amount owed, does not automatically relieve Seller of the obligation to pay any debt or costs remaining at closing, including fees such as Firm's commission. Firm will not represent or assist Seller in a transaction that is a "Distressed Home Conveyance" as defined by Chapter 61.34 RCW unless otherwise agreed in writing. A "Distressed Home Conveyance" is a transaction where a buyer

✻ Subject to court approval

_____  _____  _____  _____
Seller's Initials  Date    Seller's Initials     Date

Form 1A
Exclusive Sale
Rev. 3/21
Page 2 of 3

EXCLUSIVE SALE AND LISTING AGREEMENT

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

purchases property from a "Distressed Homeowner" (defined by Chapter 61.34 RCW), allows the Distressed Homeowner to continue to occupy the property, and promises to convey the property back to the Distressed Homeowner or promises the Distressed Homeowner an interest in, or portion of, the proceeds from a resale of the property.

6. **KEYBOX.** Firm is authorized to install a keybox on the Property. Such keybox may be opened by a master key held by members of MLS and their brokers. A master key also may be held by affiliated third parties such as inspectors and appraisers who cannot have access to the Property without Firm's prior approval which will not be given without Firm first making reasonable efforts to obtain Seller's approval.

7. **SELLER'S WARRANTIES AND REPRESENTATIONS.** Seller warrants that Seller has the right to sell the Property on the terms herein and that the Property information on the Listing Input Sheets attached to and incorporated into this Agreement is correct. Further, Seller represents that to the best of Seller's knowledge, there are no structures or boundary indicators that either encroach on adjacent property or on the Property. Seller authorizes Firm to provide the information in this Agreement and the attached pages to prospective buyers and to other cooperating members of MLS who do not represent the Seller and, in some instances, may represent the buyer. If Seller provides Firm with any photographs of the Property, Seller warrants that Seller has the necessary rights in the photographs to allow Firm to use them as contemplated by this Agreement. Seller agrees to indemnify and hold Firm and other members of MLS harmless in the event the foregoing warranties and representations are incorrect.

8. **FAIR HOUSING.** Seller acknowledges that fair housing laws prohibit discrimination based on sex, marital status, sexual orientation, gender identity, race, creed, color, national origin, citizenship or immigration status, families with children status, honorably discharged veteran or military status, the presence of any sensory, mental, or physical disability, or the use of a support or service animal by a person with a disability.

9. **CLOSING.** Seller shall furnish and pay for a buyer's policy of title insurance showing marketable title to the Property. Seller shall pay real estate excise tax and one-half of any escrow fees or such portion of escrow fees and any other fees or charges as provided by law in the case of a FHA or VA financed sale. Rent, taxes, interest, reserves, assumed encumbrances, homeowner fees and insurance are to be prorated between Seller and the buyer as of the date of closing. Seller shall prepare and execute a certification (NWMLS Form 22E or equivalent) under the Foreign Investment in Real Property Tax Act ("FIRPTA"). If Seller is a foreign person or entity, and the sale is not otherwise exempt from FIRPTA, Seller acknowledges that a percentage of the amount realized from the sale will be withheld for payment to the Internal Revenue Service.

10. **MULTIPLE LISTING SERVICE.** Seller authorizes Firm and MLS to publish the Listing Data and distribute it to other members of MLS and their affiliates and third parties for public display and other purposes. This authorization shall survive the termination of this Agreement. Firm is authorized to report the sale of the Property (including price and all terms) to MLS and to its members, financial institutions, appraisers, and others related to the sale. Firm may refer this listing to any other cooperating multiple listing service at Firm's discretion. Firm shall cooperate with all other members of MLS, or of a multiple listing service to which this listing is referred, in working toward the sale of the Property. Regardless of whether a cooperating MLS member is the agent of the buyer, Seller, neither or both, such member shall be entitled to receive the Buyer Brokerage Firm's share of the commission. MLS is an intended third party beneficiary of this Agreement and will provide the Listing Data to its members and their affiliates and third parties, without verification and without assuming any responsibility with respect to this Agreement.

11. **PROPERTY CONDITION AND INSURANCE.** Neither Firm, MLS, nor any members of MLS or of any multiple listing service to which this listing is referred shall be responsible for loss, theft, or damage of any nature or kind whatsoever to the Property, any personal property therein, or any personal injury resulting from the condition of the Property, including entry by the master key to the keybox and/or at open houses, except for damage or injury caused by its gross negligence or willful misconduct. Seller is advised to notify Seller's insurance company that the Property is listed for sale and ascertain that the Seller has adequate insurance coverage. If the Property is to be vacant during all or part of the Listing Term, Seller should request that a "vacancy clause" be added to Seller's insurance policy. Seller acknowledges that intercepting or recording conversations of persons in the Property without first obtaining their consent violates RCW 9.73.030.

_____  _____  _____  _____
Seller's Initials    Date      Seller's Initials    Date

Form 1A
Exclusive Sale
Rev. 3/21
Page 3 of 3

EXCLUSIVE SALE AND LISTING AGREEMENT

©Copyright 2021
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

12. **FIRM'S RIGHT TO MARKET THE PROPERTY.** Seller shall not commit any act which materially impairs 97
Firm's ability to market and sell the Property under the terms of this Agreement. In the event of breach of the 98
foregoing, Seller shall pay Firm a commission in the above amount, or at the above rate applied to the listing price 99
herein, whichever is applicable. Unless otherwise agreed in writing, Firm and other members of MLS shall be 100
entitled to show the Property at all reasonable times. Firm need not submit to Seller any offers to lease, rent, 101
execute an option to purchase, or enter into any agreement other than for immediate sale of the Property. 102

13. **SELLER DISCLOSURE STATEMENT.** ~~Unless~~ Seller is exempt under RCW 64.06, ~~Seller shall provide to Firm~~ 103
~~as soon as reasonably practicable a completed and signed "Seller Disclosure Statement" (Form 17 (Residential),~~ 104
~~Form 17C (Unimproved Residential), or Form 17 Commercial). Seller agrees to indemnify, defend and hold Firm~~ 105
~~harmless from and against any and all claims that the information Seller provides on Form 17, Form 17C, or~~ 106
~~Form 17 Commercial is inaccurate.~~ 107

14. **DAMAGES IN THE EVENT OF BUYER'S BREACH.** In the event Seller retains earnest money as liquidated 108
damages on a buyer's breach, any costs advanced or committed by Firm on Seller's behalf shall be paid 109
therefrom and the balance divided equally between Seller and Firm. 110

15. **ATTORNEYS' FEES.** In the event either party employs an attorney to enforce any terms of this Agreement and 111
is successful, the other party agrees to pay reasonable attorneys' fees. In the event of trial, the successful party 112
shall be entitled to an award of attorneys' fees and expenses; the amount of the attorneys' fees and expenses 113
shall be fixed by the court. The venue of any suit shall be the county in which the Property is located. 114

Are the undersigned the sole owner(s)? ☐ YES ☒ NO 115

| Seller's Signature | Date | RE/MAX Northwest Realtors | 116 |
| | | Real Estate Firm | |
| Seller's Signature | Date | Broker's Signature  04/09/21  Date | 117 |