1
2

3

4

5

6

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

7

8    In re:

9    SAMIA EL-MOSLIMANY

10              Debtor

11

Case No. 18-14820-CMA
Chapter 7

**DEBTOR'S RESPONSE TO MOTION TO
LIST PROPERTY AND APPROVE
COMPROMISE**

12    COMES NOW Samia El-Moslimany ("Samia"), and makes the following objection

13   to the trustee's motion (Docket #148, the "Motion") to list her homestead for sale, and to

14   approve a compromise with judgment creditor Hayat Sindi ("Sindi"). This is a proposed

15   short sale.

16   **1. SUMMARY OF ARGUMENT**

17   The trustee's Motion is unwise and unnecessary. It will most likely drive this

18   estate further into administrative insolvency, while depriving a family of its homestead

19   property (the "Homestead") for no discernable benefit to creditors. There is no

20   immediate threat that the property will be lost to foreclosure. There is no showing that

21   the trustee will likely prevail on the merits of his avoidance action against Ms. Al-Yousef

22   ("Al-Yousef"). And there is no commitment that any portion of the sale proceeds will go

23   to unsecured creditors.

24   **2. WASHINGTON FEDERAL PAYMENT STATUS**

25   The trustee complains that Samia is not making mortgage payments to the first

26

27

28   DEBTOR'S RESPONSE - 1

**DONALD A BAILEY**
1601 Fifth Avenue, #610
Seattle WA 98101
206 910 2384
donald.bailey@shaferbailey.com

mortgage holder, Washington Federal Bank. The short answer to this is that Washington Federal refuses to accept any payments short of a complete cure. See Declaration of Donald A Bailey, Exhibit A. Samia would gladly make adequate protection payments to Washington Federal, if it could be made to accept them. Another response to this is to point out that no foreclosure by Washington Federal is pending, or even threatened, at this point in time. Moreover, according to the trustee's own realtor, the Homestead is appreciating in value faster than the debt to Washington Federal is increasing[1].

## 3. THE PROPOSED SALE WILL NOT BENEFIT UNSECURED CREDITORS

The trustee expects between $78,000 and $90,000 of net proceeds from the sale of the Homestead[2]. Half of this will go to judgment lien creditor Sindi. The other half will be divided between the bankruptcy estates of Samia and her mother and co-owner, Ann El-Moslimany ("Ann"). So each estate will net, at best, $19,500 to $22,500 from the sale. There is no commitment to allocate any portion of the proceeds to unsecured creditors. The administrative expenses in this case alone currently exceed $96,000[3]. So the sale itself will generate no benefit for creditors, and will leave the Samia bankruptcy estate still administratively insolvent by over $50,000. The court should not approve a short sale where there is no benefit to unsecured creditors.

Even if all the proceeds of the projected sale were to go to creditors, a return to the estate of $22,500 would result in a dividend of only 1%. This is insufficient to justify

---

[1] The Declaration of Rik Jones alleges that the property has increased in value by $100,000 to $150,000 since he evaluated it in August 2019. The trustee asserts that he debt to Washington Federal has increased by $60,000 in that time.

[2] The trustee's calculation of how much money must be set aside to satisfy the disputed secured interest of Al-Yousef is off by over $100,000. See below at page 4-5.

[3] See the email from Denice Moewes to Donald Bailey attached as Exhibit B to the Bailey Declaration.

**DONALD A BAILEY**
1601 Fifth Avenue, #610
Seattle WA 98101
206 910 2384
donald.bailey@shaferbailey.com

DEBTOR'S RESPONSE - 2

1    the sale of the Homestead.

2         Generally, unless a certain minimum value, as set forth in guidelines of the
3         United States Trustee from time to time, can be realized, trustees are
          strongly discouraged from liquidating assets in nominal asset cases.
          Indeed, the legislative history of the Code made clear Congress's
4         displeasure with prior practices under which trustees' administration of
          "nominal asset cases" benefitted only the trustees themselves."  6 Collier
5         on Bankruptcy ¶704.02[2] (16th Ed. 2021)

6         Under the scenario contemplated by the Motion, the only way there is a benefit to

7 creditors is if the trustee avoids the Al-Yousef deed of trust and it is preserved for the

8 benefit of the estate.  And the only way the Al-Yousef deed of trust is preserved for the

9 benefit of the estate is if it avoided as an actual fraud.  If the trustee only succeeds in

10 proving that the deed of trust secures a much smaller amount of debt than is claimed,

11 there will be no lien to be preserved for the benefit of the estate, and Sindi's judgment

12 lien will absorb any equity thus generated.

13 **4. THE TRUSTEE HAS NOT DEMONSTRATED A BONA FIDE DISPUTE UNDER**

14 **SECTION 363(f)(4)**

15         The avoidance action against Al-Yousef has been pending one year and seven

16 months.  The trustee apparently has little or nothing to show for that time and effort.

17 Certainly, the trustee has not attempted to make any factual showing that the Al-Yousef

18 avoidance action has probable merit or likelihood of success.  The trustee has simply

19 made the conclusory statement that the Al-Yousef deed of trust is subject to a bona fide

20 dispute.

21         The trustee has the burden of demonstrating that a bona fide dispute
          exists. To meet this burden the trustee must establish that there is an
22         objective basis for either a factual or legal dispute as to the validity of the
          debt. The court is not required to resolve the underlying dispute as a
23         condition to authorizing the sale under this provision, but must determine
          that it exists.  3 Collier on Bankruptcy ¶363.06[5] (16th Ed. 2021)
24
While it is true that the court does not have to definitively resolve the dispute to order a
25
sale under section 363(f)(4), the party seeking to sell free and clear of liens ought to be
26
27

28 DEBTOR'S RESPONSE - 3

**DONALD A BAILEY**
1601 Fifth Avenue, #610
Seattle WA 98101
206 910 2384
donald.bailey@shaferbailey.com

1  able to articulate the factual and legal basis of the dispute beyond the bare allegations of
2  the complaint.  Here, the trustee has not done so[4].

3  The only creditors who will get any money from the proposed sale itself are
4  Washington Federal and Sindi.  Sindi's entitlement to the net proceeds is based on her
5  judgment lien, recorded September 25, 2018 (Exhibit 4 to declaration of Denice Moewes,
6  Docket # 149).  The petition in this case was filed on December 20, 2018, less than 90
7  days after the judgment lien was recorded.  The only reason the judgment lien still exists
8  is that the trustee missed the statute of limitation for avoidable preferences.  Courts
9  should be especially wary when a bankruptcy trustee throws in his lot with a secured
10  creditor. *In re Preston Lumber Corp.*, 199 B.R. 415 (Bankr. N.D. Cal. 1996).

11  This court has repeatedly cautioned trustees about pursuing litigation without a
12  reasonable prospect of benefit to creditors.  It should so caution the trustee in this case.
13  If it has cost the estate $96,000 to get to this point, with apparently little to show for it,
14  how much more will it cost to get through trial?  Is the risk of deepening administrative
15  insolvency worth the remote possibility of a potential benefit to creditors?  A reasonable
16  cost-benefit analysis would show that this litigation is a mistake.

17  Add to this the fact that pursuing this litigation actually endangers the defendant
18  in Saudi Arabia.  Is seeing Ms Al-Yousef imprisoned and endangered worth a 10% or
19  20% return to unsecured creditors?

20  **5. THE SET-ASIDE FOR THE DISPUTED DEED OF TRUST IS INSUFFICIENT**

21  The trustee proposes to set aside $446,000 from the sale of the Homestead to
22  satisfy the Al-Yousef deed of trust in the event the trustee's avoidance action is

23

24  [4] With regard to the allegation that the funds were not actually loaned by Al-
25  Yousef to Samia, see the Second Supplemental Declaration of Samia El-Moslimany,
   Docket 130-1 and exhibits thereto, detailing each advance with backup documentation.

26                                                              **DONALD A BAILEY**
                                                                1601 Fifth Avenue, #610
27                                                              Seattle WA 98101
                                                                206 910 2384
28  DEBTOR'S RESPONSE - 4                                       donald.bailey@shaferbailey.com

unsuccessful.  That is the face amount of the two notes secured by the deed of trust, without interest, but it is not sufficient to satisfy Al-Yousef's claim.  Samia and Al-Yousef assert that Al-Yousef's deed of trust secures a total of $574,536, including the notes themselves and subsequent advances (only $26,667 of the subsequent advances are post-petition).  See Second Supplemental Declaration of Samia El-Moslimany, Docket 130-1 and exhibits thereto.

At a minimum, if the trustee is selling property under section 363(f)(4) based on a bona fide dispute, he or she must set aside sufficient proceeds to satisfy the full amount of the claim that is in dispute; in other words, the trustee must assume, for purposes of setting aside funds, that the party whose interest is disputed will prevail on all its claims.

Thus, based on a projected sale price of $1,300,000, the proposed sale will be insufficient to set aside funds for the Al-Yousef deed of trust and also pay the two homestead exemptions:

| | |
|---|---|
| Gross Sale Price | $1,300,000 |
| Costs of Sale (8%) | - $104,000 |
| Washington Federal | - $410,000 |
| Al-Yousef Deed of Trust | - $574,536 |
| Samia's Homestead | - $125,000 |
| Ann's Homestead | - $125,000 |
| Net Proceeds | - $38,536 |

In fact, to generate $90,000 of net proceeds, the Homestead must sell for at least $1,440,000.  Nor has the trustee accounted for possible income tax on the capital gain

**DONALD A BAILEY**
1601 Fifth Avenue, #610
Seattle WA 98101
206 910 2384
donald.bailey@shaferbailey.com

DEBTOR'S RESPONSE - 5

1  generated by the sale of the Homestead[5].

2  **6. THE TRUSTEE SHOULD NOT BE AUTHORIZED TO EVICT THE DEBTOR**

3  **AND HER FAMILY PENDING SALE**

4     In addition to sale of the Homestead, the trustee seeks authority to evict Samia

5  and her family and rent the property[6].  In addition to Samia herself, her foster son and

6  his wife and three small children live in the Homestead.  The trustee thinks he can get

7  $4000 to $5000 per month rent, but is equivocal as to whether he would keep the rental

8  income or attempt to pay it to Washington Federal.  (As mentioned above, Washington

9  Federal has steadfastly refused to accept payments from Samia.)

10     This makes no sense.  What tenant would move into a $5000/month rental

11  without at least a year lease?  And what buyer will close on a property occupied by a

12  tenant with an unexpired lease?  Simply put, leasing the property is inconsistent with

13  expeditiously marketing it.

14     The Washington homestead exemption protects more than a right to receive up to

15  $125,000 on the forced sale of one's residence.  It also protects a right of possession, a

16  right to keep a roof over one's family's head.  R.C.W. 6.13.010(1): "The homestead

17  consists of real or personal property that the owner uses as a residence." *Bank of*

18  *Anacortes v. Cook,* 10 Wn. App. 391 (Wash. Ct. App. 1974);  See also Senate Bill 5408,

19  section 4(2), pending signature by the Governor: "In a bankruptcy case, the debtor's

20  exemption shall be determined on the date of the bankruptcy petition. If the value of the

21

---

22     [5]  The Homestead was originally purchased by Samia's parents in 1968 for about $40,000.  A 50%
23  interest was gifted to Samia in 2008.  It was remodeled in 2006-2010, at a cost of approximately $369,000
     (Bailey Declaration Exhibit C).  Thus, a sale at $1,440,000 will generate taxable gain of $531,000:  $1,440,000
24  - $500,000 (two exclusions) - $409,000 (basis) = $531,000 taxable gain.

25     [6] The proposed order is unclear as to whether the trustee is given authority to demand turnover at
     a future date without court order, or whether turnover would be subject to further hearing.

26                                                          **DONALD A BAILEY**
                                                          1601 Fifth Avenue, #610
27                                                          Seattle WA 98101
                                                          206 910 2384
28  DEBTOR'S RESPONSE - 6                                 donald.bailey@shaferbailey.com

debtor's interest in homestead property on the petition date is less than or equal to the amount that can be exempted under RCW 6.13.030, then the debtor's entire interest in the property, *including the debtor's right to possession* and interests of no monetary value, is exempt." (Emphasis added)  The exempt funds are intended, in the case of a voluntary sale, to be re-invested in a new homestead; that is, to give the unfortunate debtor the means to be housed in the future.  R.C.W. 6.13.070(1).  A debtor should only be evicted from homestead property if they are seriously interfering with or impeding the trustee's efforts to sell the property, or are damaging the property.  Failure to pay mortgage payments is not such a circumstance, particularly when the lender refuses to accept such payments.

In *In re Szekely*, 936 F.2d 897 (7th Cir. 1991), Judge Richard Posner held that a debtor may not be forced to turn over their homestead property until they receive their homestead exemption in cash.  He reasoned that the value of a homestead exemption is diminished to the extent the debtor must wait for it following eviction from the homestead property.  Although the opinion turned in part on Illinois law[7], it contains an interesting discussion of the balance and tension between the Bankruptcy Code's debtor relief policy and its creditor recovery policy.

The trustee had demanded that the Szekelys pay rent as a condition of remaining in the property pending sale.

> Because the house belongs to the estate, the trustee can pay the Szekelys their $15,000 and tell them to skedaddle, and then rent the house to whomever he pleases until he sells it. That much is clear[8]. . . .

---

[7] The Illinois and Washington homestead statutes are very similar.  Compare 735 ILCS 5/12-901 to RCW 6.13.010.  If anything, the Washington statute is more protective of the right of possession than the statute construed by Judge Posner.

[8] It should be noted that Szekely was a case where there clearly was substantial equity above the homestead exemption.  That is not the case here.

DEBTOR'S RESPONSE - 7

**DONALD A BAILEY**
1601 Fifth Avenue, #610
Seattle WA 98101
206 910 2384
donald.bailey@shaferbailey.com

> Some brokers believe that it is more difficult to sell a house with a tenant in it than with the house vacant ... This suggests that he [trustee] too is seeking a windfall, and that the real purpose of his charging rent was to induce the Szekelys to leave, so that the house could be sold more easily. To cast them out into the cold, as it were, without giving them the $15,000 to which the homestead exemption entitled them, undermined the purpose of the exemption, which is to assure the debtor adequate housing despite the economic disaster that has overtaken him. The harm to the debtor depends on how long it takes to sell the house. If it is sold right off, he gets the cash value of the exemption; but if there is a delay in selling it, he must arrange for substitute housing without the assistance that Illinois meant him to have through the homestead exemption. *Szekely* 396 F.2d at 902.

Finally, there is a pandemic in progress. The trustee, in operating the property as a rental, must comply with local laws. Evictions are prohibited as a matter of critical public health policy. These prohibitions exist on the state and federal level. See Proclamation by the Governor Extending and Amending 20-05 and 20-19, et seq. 20-19.6 Evictions and Related Housing Practices (March 31, 2021), and "Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19" (85 Fed. Reg. 55292, September 4, 2020) promulgated by the Centers for Disease Control under Section 361 of the Public Health Service Act (42 U.S.C. § 264) and 42 C.F.R. § 70.2. Under these circumstances, putting Samia and her family out on the street would be both immoral and illegal.

## 7. ISSUES WITH THE FORM OF PROPOSED ORDER

If the court grants the trustee's motion, the proposed order should be revised to provide:

1. That turnover of the Homestead will be subject to further notice and hearing, based on a showing that the debtor's occupancy is interfering with sales efforts.

2. That any proposed sale will have to generate funds sufficient to pay the two homestead exemptions at $125,000 each, and set aside $574,536 for the Al-Yousef deed of trust.

3. That the homestead exemptions, when paid, will be free and clear of any

**DONALD A BAILEY**
1601 Fifth Avenue, #610
Seattle WA 98101
206 910 2384
donald.bailey@shaferbailey.com

DEBTOR'S RESPONSE - 8

1  claims of creditors, including non-dischargeable debts, pursuant to Bankruptcy Code

2  §522(c).

3  **8. CONCLUSION**

4      The court denied, without prejudice, the debtor's motion to abandon the

5  Homestead until the avoidance action against Al-Yousef is resolved. The motion to list

6  the Homestead for sale should likewise be denied until the Al-Yousef adversary

7  proceeding is resolved, or until there is some actual danger that the property will be lost

8  to foreclosure.  What is fair for the debtor ought to be fair for the trustee.  Then the

9  Homestead should be sold only if the trustee can demonstrate that there will in fact be

10  more than a minimal benefit to unsecured creditors.

11      Dated: April 23, 2021

12                                         DONALD A BAILEY
                                           Attorney at Law
13
                                           /s/ Donald A Bailey
14                                         WSB#12289
                                           Attorney for Debtor
15

16

17

18

19

20

21

22

23

24

25

26                                         **DONALD A BAILEY**
                                           1601 Fifth Avenue, #610
27                                         Seattle WA 98101
                                           206 910 2384
28  DEBTOR'S RESPONSE - 9                  donald.bailey@shaferbailey.com