Hon. Christopher M. Alston
Chapter 7
Hearing Date: June 18, 2021
Hearing Time: 9:30 a.m.
Hearing Site: Telephonic
Response Date: June 11, 2021

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE:

SAMIA EL-MOSLIMANY,

                                    Debtor.

Chapter 7

No. 18-14820-CMA

CREDITOR HAYAT SINDI'S OBJECTION TO TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT OF ADVERSARY PROCEEDING 19-2-0116 CAPTIONED AS BROWN V. AL-YOUSEF

COMES NOW creditor Hayat Sindi ("**Creditor**" or "**Dr. Sindi**"), by and through undersigned counsel, and hereby objects to: 1) Trustee's Motion to Approve Compromise and Settlement of Adversary Proceeding 19-0116 Captioned as Brown v. Al-Yousef filed by Ronald G. Brown, the Chapter 7 Trustee in Case No. 18-14820-CMA (the "**Brown Motion**"); and 2) Trustee's Motion for an Order Approving Compromise of Claim filed by Nancy L. James, the Chapter 7 Trustee in Case No. 20-13149-CMA (the "**James Motion**" and together with the Brown Motion, the "**Motions**").

HAYAT SINDI'S OBJECTION TO MOTIONS TO APPROVE
COMPROMISE AND SETTLEMENT - 1

Law Offices of Anthony S.
Wisen, PLLC
2208 NW Market St., # 502
Seattle, WA 98107
206.418-8720 · tony@wisenlaw.com

## I.  STATEMENT OF FACTS

The issues currently before the Court are grounded in a campaign of abuse that was launched against Dr. Sindi by Samia El-Moslimany ("**Samia**") and her mother, Ann El-Moslimany ("**Ann**" and together with Samia, the "**El-Moslimanys**").  Simply put, the El-Moslimanys came to believe that Dr. Sindi had an affair with Samia's husband, and responded with a vendetta intended to destroy Dr. Sindi personally and professionally.  This reign of terror featured false, defamatory, and malicious attacks on Dr. Sindi's academic credentials, professional qualifications, and even her age.  *See generally* Wisen Declaration, Exh. A (First Circuit Opinion).

On January 25, 2013, Dr. Sindi sued the El-Moslimanys in Massachusetts, and the case went to trial over three years later, on July 11, 2016.  *Id.* at 4.  "In the course of its jury instructions, the court encouraged the jurors to consult a nine-page document (referred to as a "chalk"), which listed approximately 132 allegedly defamatory statements attributed to Samia and/or Ann."  *Id.* at 4-5.  "The jury returned a general verdict in Dr. Sindi's favor on all but one of the submitted claims."  *Id.* at 5.  "It found Samia liable for intentional infliction of emotional distress; absolved Ann of that charge; and found both Samia and Ann liable for defamation, tortious interference with contract, and tortious interference with advantageous relations.  The jury awarded damages totaling $3,500,000."  *Id.*  The district court subsequently granted Dr. Sindi's motion for a permanent injunction, and "enjoined the El-Moslimanys from publishing 'orally, in writing, through direct electronic communications, or by directing others to websites or blogs reprinting' six statements that the district court concluded were defamatory."  *Id.* at 5-6.  The district court also somewhat reduced the damages

HAYAT SINDI'S OBJECTION TO MOTIONS TO APPROVE
COMPROMISE AND SETTLEMENT - 2

Law Offices of Anthony S.
Wisen, PLLC
2208 NW Market St., # 502
Seattle, WA  98107
206.418.8720 ·  tony@wisenlaw.com

that had been awarded by the jury. *Id.* at 6.

The El-Moslimanys appealed to the First Circuit Court of Appeals. The First Circuit affirmed the jury's findings of liability on most of Dr. Sindi's tort claims, including the defamation claim, and affirmed the corresponding money judgments. *Id.* at 63. However, the tortious interference with advantageous relations claim was reversed, and the injunction was vacated. *Id*.

The record is replete with evidence that the El-Moslimanys acted with malice toward Dr. Sindi, an approach that has not changed in these bankruptcy proceedings. The First Circuit explained that Samia El-Moslimany had conducted a "more than four-year long war of vituperation … against Dr. Sindi," *id.* at 29, and the record is otherwise filled with proof of the El-Moslimanys willful intent to harm Dr. Sindi. As the First Circuit observed, "the jury could supportably have concluded that Samia …. displayed a strain of ***deliberate malevolence*** that easily qualified as extreme and outrageous conduct." *Id.* at 28-29 (emphasis added). It also concluded that "the record supports the jury's determination that Dr. Sindi's emotional distress was the foreseeable result of Samia's years-long pattern of vilification…" *Id.* at 32.

On February 27, 2017, while the appeal was pending, Dr. Sindi recorded a Notice of Judgment Lien Against Homestead Property. Wisen Decl., Exh. B. Then, after the First Circuit issued its ruling on July 11, 2018, the district court entered its Second Amended Final Judgment. Wisen Decl., Exh. C. Dr. Sindi subsequently registered the Second Amended Final Judgment in King County Superior Court, and on September 25, 2018, recorded the resulting Foreign Judgment in the King County Real Property Records under Assessor's Number 20180925000965. Wisen Decl., Exh. D.

HAYAT SINDI'S OBJECTION TO MOTIONS TO APPROVE
COMPROMISE AND SETTLEMENT - 3

Law Offices of Anthony S.
Wisen, PLLC
2208 NW Market St., # 502
Seattle, WA 98107
206.418-8720 · tony@wisenlaw.com

On December 20, 2018, Samia El-Moslimany filed for bankruptcy, which is pending under Case No. 18-14820-CMA. The judgment in favor of Dr. Sindi is scheduled in the amount of $1,548,500.00. Based on the willful and malicious conduct summarized above, Dr. Sindi filed a non-discharge complaint against Samia El-Moslimany, which is pending under Adv. Proc. No. 19-01034. The Court denied Dr. Sindi's motion for summary judgment, and the adversary case is set for trial on August 10-12.

On December 20, 2020, Ann El-Moslimany filed for bankruptcy, which is pending under Case No. 20-13149-CMA. Ann El-Moslimany subsequently passed away. Dr. Sindi has filed a Proof of Claim in Ann El-Moslimany's bankruptcy in the amount of $354,575.72. Based on the willful and malicious conduct described above, Dr. Sindi filed a non-discharge complaint against Ann El-Moslimany and her estate. No answer has been filed.

The most significant asset identified by Ann and Samia El-Moslimany in their bankruptcy schedules is a jointly-owned residence in Burien, Washington (the "**Property**"), which has an estimated market value of $1.3 Million (or perhaps significantly more, as discussed *infra*). *See* Wisen Decl., Exh. E (Declaration of Rik Jones, ¶ 5). There is a first position deed of trust in favor of Washington Federal with a balance due of approximately $410,000. *See* Wisen Decl., Exh. F (Notice of Hearing on Trustee's Motion to: 1) Approve Compromise and Settlement; 2) Authorizing Listing of Property for Sale; 3) to Employ Realtor; or Alternatively, 4) to Compel Turnover of Property of the Estate ("**Trustee's Motion to List Property**")). Samia and Ann El-Moslimany also each claim a homestead exemption of $125,000 against the property. *Id.*

Samia and Ann El-Moslimany also scheduled a deed of trust in favor of an individual

Law Offices of Anthony S.
Wisen, PLLC
2208 NW Market St., # 502
Seattle, WA 98107
206.418-8720 · tony@wisenlaw.com

named Aziza Al-Youssef; however, this lien (scheduled by Samia El-Moslimany in the amount of $500,000)[1] is believed to be fraudulent and invalid, as described in the pleadings of record in the Al-Yousef Adversary. *See* Adv. Pro. No. 19-01116-CMA, Dkt. No. 1 (Complaint).

If the Al-Youssef lien is avoided, Dr. Sindi, who is far and away the most significant creditor of both estates,[2] would recover the lion's share of the proceeds of a sale of the Property after closing costs, administrative expenses, and legal fees incurred by the trustees. Critically, even setting aside the Al-Youssef lien, the Trustees recently concluded that there was equity in the Property. *See, e.g.,* Wisen Decl., Exh. F (Trustee's Motion to List Property, Pg. 3) ("after payment of the costs of sale and the secured debt, setting aside the funds for the disputed debt and the two homestead exemptions, there will remain between $78,000 and $90,000 in proceeds to which the Sindi lien can attach").

In order to unlock this value, the Trustees and Dr. Sindi agreed to enter into an "Agreement to Market Real Property," made effective April 30, 2021 (the "**Property Agreement**"). Wisen Decl., Exh. G. The Property Agreement was made subject to Court approval, and the Trustees accordingly filed companion motions on April 9, 2021 seeking approval of the Property Agreement with Dr. Sindi, and other relief intended to result in a sale of the Property. *See, e.g.,* Wisen Decl., Exh. F (Trustee's Motion to List Property; Case 20-13149-CMA Dkt. Nos. 43-48; Case 18-14820-CMA Dkt. Nos. 148-151. The Property Agreement provided, among other things, that the Trustees "***shall*** employ a real estate agent to

---

[1] *See* Samia El-Moslimany's Schedule D (Dkt. No. 10, pg. 13). The Trustees pleadings note that Ann El-Moslimany scheduled the amount as $547,537, but that the Trustees believe that the balance owed is approximately $446,000. *See* James Motion, pg. 1-2.

[2] *See, e.g.*, James Motion at 3 (indicating Dr. Sindi is the "only significant creditor" in the case, and "will receive over 98% of the funds disbursed.").

Law Offices of Anthony S.
Wisen, PLLC
2208 NW Market St., # 502
Seattle, WA  98107
206.418-8720 · tony@wisenlaw.com

market the Property" (¶ 3) (emphasis added), and described the anticipated allocation of sale proceeds. *Id.* at ¶ 4. The Property Agreement further provides that each party "agrees to take any and all action necessary where appropriate to execute and discharge its responsibilities and obligations created pursuant to … this Agreement." *Id.* at ¶ 14.

Despite the existence of the Property Agreement with Dr. Sindi, the Trustees subsequently entered into a settlement with Samia El-Moslimany (on her own behalf, and as personal representative of Ann El-Moslimany's probate estate) and Aziza Alyousef that is the subject of the instant Motions. The two settlements cannot be reconciled, and so the Trustees are effectively asking the Court to allow them to undo their agreement with Dr. Sindi in order to pursue an option which they claim is more favorable to the estates.

## II.  LEGAL AUTHORITY AND ARGUMENT

The Trustee's proposed settlement with Ms. El-Moslimany should be denied under *A&C Properties*, 784 F.2d 1377 (9th Cir. 1986), cited in the Trustees' Motion at Pg. 5. As a threshold matter, *A&C* counsels that "there must be more than a mere good faith negotiation of a settlement by the trustee in order for the bankruptcy court to affirm a compromise agreement. The court must also find that the compromise is fair and equitable." *Id.* at 1381 (*citing Citibank, N.A. v. Baer*, 651 F.2d 1341, 1345-46 (10th Cir. 1980). Moreover, "[t]he trustee, as the party proposing the compromise, has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved." *Id.* (citing *In re Hallet*, 33 Bankr. 564, 565-66 (Bankr. D. Me. 1983). Here, the Trustees have not met their burden to show that the proposed settlement is "fair and equitable." To the contrary, it appears that the only real value to settlement with Ms. El-Moslimany and Ms. Alyousef is that it would be more

Law Offices of Anthony S.
Wisen, PLLC
2208 NW Market St., # 502
Seattle, WA  98107
206.418-8720 · tony@wisenlaw.com

expedient. It would not, however, be a fair and equitable result in light of the fact that there is a better option: approval of the earlier settlement with Dr. Sindi, a path that is likely to result in a far better recovery for the creditors.[3]

As discussed in the Trustee's Motions, the Court is to evaluate four factors in determining wither to approve a compromise or settlement. *See also id*. Here, only **one** of the factors likely weighs in favor or approving the settlement, while the other three weigh strongly against approval.

### A. Probability of Success in Litigation.

The pleadings filed by Trustee Brown in the Alyousef Adversary lay out the fraudulent nature of the Alyousef lien in exquisite detail. *See e.g.* Dkt. No. 1 (Complaint). Dr. Sindi has also separately objected to the alleged Al-Yousef lien. *See* Dkt. No. 17 (Case No. 18-14820-CMA); Dkt. No. 34 (Case No. 20-13149-CMA). Critically, Trustee Brown acknowledges that he has a "75% chance of proving that the transfers to Al-Yousef were actually and/or constructively fraudulent." Brown Motion, pg. 5; Brown Decl., ¶ 14. Accordingly, the Trustees have a strong probability of success in the Al-Yousef adversary, and this factor weights against approving the settlement.

### B. Difficulties to be Encountered in the Matter of Collection.

The Trustees acknowledge that "there is substantial equity in the Property" and therefore "***does not believe there would be much difficulty collecting on the judgment***." *Id.*

---

[3] Dr. Sindi also objects to the Motion to the extent that the source of the $300,000 is not disclosed prior to the hearing.

HAYAT SINDI'S OBJECTION TO MOTIONS TO APPROVE
COMPROMISE AND SETTLEMENT - 7

Law Offices of Anthony S.
Wisen, PLLC
2208 NW Market St., # 502
Seattle, WA 98107
206.418-8720 · tony@wisenlaw.com

Case 18-14820-CMA    Doc 174    Filed 06/11/21    Ent. 06/11/21 15:12:15    Pg. 7 of 13

(emphasis added). Again, because there would not "be much difficulty collecting on the judgment," this factor cuts against the proposed settlement.

The Brown Motion goes on to suggest that there might be "difficulties in getting the Debtor and her family to leave the Property and the assistance of the U.S. Marshal might be required." *Id.* In essence, the Trustees suggest that Ms. El-Moslimany might refuse to follow this Court's orders regarding the disposition of the Property. Dr. Sindi would like to give Ms. El-Moslimany the benefit of the doubt on this score. And even if the Trustees are correct, Ms. El-Moslimany should not be rewarded for implicit or explicit threats that she might not peaceably depart the Property if and when required to do so. The argument is a red herring.

Finally, the suggestion that "the holder of the first mortgage … could commence foreclosure proceedings at any time" rings hollow in light of the fact that no foreclosure proceedings have actually begun. This means that the Trustees would have many months – in perhaps the hottest real estate market in history – to market and sell an extraordinarily desirable residential property. There seems little doubt that a sale transaction would close – with payoff to the first position lender – long before foreclosure would become a legitimate concern.

### C. Complexity of Litigation and Expense, Inconvenience and Delay.

This is the only factor that arguably supports the Trustee's position, and even it is a close call. For starters, the Trustees start by listing a number of litigation tasks that would be required to take ***any*** case to trial, such as marshalling evidence and taking depositions. Brown Motion, pg. 6. Other than the existence of information in Saudi Arabia and the possible need for a translator, there is nothing that appears to be remarkably complex, expensive, or inconvenient about the case. This is bolstered by the Trustees' $125,000 estimate for additional

HAYAT SINDI'S OBJECTION TO MOTIONS TO APPROVE
COMPROMISE AND SETTLEMENT - 8

Law Offices of Anthony S.
Wisen, PLLC
2208 NW Market St., # 502
Seattle, WA 98107
206.418-8720 · tony@wisenlaw.com

fees to take the case to trial. While certainly not an insignificant amount, it is hardly inordinately expensive. The Trustees also observe that the Debtor might appeal an adverse ruling. *Id.* But so might any debtor. In sum, the fact that it will cost money to obtain a judgment in the Al-Youssef adversary is an unremarkable reality that exists in any lawsuit, and does not weigh strongly in favor of settlement.

**D. Best Interest of Creditors.**

As an initial matter, Dr. Sindi is the most significant creditor of both estates, holding an overwhelming percentage of the value of the creditor claims. As such, the rule that "creditors' objections to a compromise must be afforded due deference …," *A&C* at 1382, carries special weight here. Dr. Sindi is effectively ***the*** creditor.

The proposed resolution is respectfully ***not*** in her best interests, or those of the few other creditors. Indeed, the settlement would have significant deleterious effects on Dr. Sindi, with very little upside. Although the Motions do not state a specific dollar amount that would flow to Dr. Sindi after payment of the Trustee's costs, fees, and legal expenses, she understands that her net from the $300,000 payment by Ms. El-Moslimany would be in the range of $110-$120,000. The Trustees would then dismiss the existing adversary action, and effectively depart from the scene as it concerns the various issues around the Al-Yousef lien.

But that would not be the end of things: Dr. Sindi is not a party to the Al-Yousef adversary, and her rights to pursue her own lien avoidance arguments would not (and could not) be prejudiced by the Trustees' settlement with Ms. El-Moslimany and Ms. Alyousef. *See A&C* at 1384 ("the bankruptcy court is obligated to preserve the rights of the creditors"); Brown Motion, pg. 4 ("Trustee Brown does not believe [Dr. Sindi] is prejudiced by the settling

Law Offices of Anthony S.
Wisen, PLLC
2208 NW Market St., # 502
Seattle, WA 98107
206.418-8720 · tony@wisenlaw.com

of an Adversary Proceeding to which she is not a party." What this really means is that Dr. Sindi would be forced to recreate the work done by Trustee Brown to date in the Al-Yousef adversary, work which he estimates has already cost "approximately $100,000." Brown Motion pg. 6; Brown Decl., ¶ 17. The bottom line is that Dr. Sindi's $110-$120,000 would be largely consumed getting to the same point where Trustee Brown is currently. It is a gross understatement to say that this would be a massive waste of resources, one that can be avoided if the current adversary action is brought to its natural end by Trustee Brown.

The Trustees also fail to address how and why the settlement with Ms. El-Moslimany and Ms. Al-Yousef is preferable to the earlier settlement they reached with Dr. Sindi. In fact, the earlier resolution is objectively better.

This is largely due to the current red-hot market for residential property in the Seattle area. The Jones Declaration submitted by the trustees indicated a Property value of $1,300,000 (or more) as of April 9, 2021. Wisen Decl., Exh. E, ¶ 5. At this value, the amount likely to come to the estates following a sale – after paying the first-position mortgage, setting aside homestead payments, and reserving $446,000 attributable to the Al-Yousef lien – was $78-90,000. *See* Wisen Decl., Exh. F (Trustee's Motion to List Property, Pg. 3). This amount would allow the Trustees to make a significant payment toward their incurred expenses – including legal fees – and would also leave open the possibility for a large additional payment from the eventual resolution of the Al-Yousef action. Indeed, using the Trustees 75% "likelihood of success" assumption, the expected value of the Al-Yousef claim is $240,750.[4]

---

[4] $446,000 less $125,000 equals $321,000. 75% of $321,000 is $240,750.

HAYAT SINDI'S OBJECTION TO MOTIONS TO APPROVE
COMPROMISE AND SETTLEMENT - 10

Law Offices of Anthony S.
Wisen, PLLC
2208 NW Market St., # 502
Seattle, WA 98107
206.418-8720 · tony@wisenlaw.com

Combined with the $78,000 - $90,000 expected by the Trustees in the near term from a sale of the Property, the Trustee's own evidence shows that the value of the plan proposed in the Trustee's Motion to List Property is higher than $300,000.

Critically, the value provided by Mr. Jones in early April is also badly outdated. Recognizing their imperfect nature, as of June 9, 2021, the value of the Property was $1,741,295 according to Zillow (Wisen Decl., Exh. H) or $1,455,762 according to Redfin (Wisen Decl., Exh. I). This does not appear to be pie-in-the-sky, as the Zillow estimate indicates that the "30 day change" in the value of the Property was a whopping $231,275. Indeed, there could be well more than $300,000 in proceeds available from a sale of the Property *even if the Al-Youssef lien eventually has to be paid in full.* A hypothetical example based on Zillow's estimate is as follows:

| | |
|---|---|
| Property Value: | $1,741,295 |
| Washington Federal: | -$410,000 |
| Homesteads: | -$250,000 |
| Al-Yousef Holdback: | -$446,000 |
| Cost of Sale | -$174,129 |
| **Net:** | **$461,166** |

In sum, if either of these recent estimates are remotely accurate, accepting $300,000 is simply unjustifiable. Indeed, if Zillow's current figures are taken at their face, the value of a resolution involving a sale of the Property exceeds $700,000.[5] At Redfin's lower estimate, the likely recovery is still over $500,000. Given the white-hot real estate market, the number could even be higher. *At the very least the Property should be exposed to market in order to find out.*

---

[5] $461,166 net proceeds from the sale, plus the $240,750 value of the Al-Yousef claim. *See* fn. 4.

HAYAT SINDI'S OBJECTION TO MOTIONS TO APPROVE
COMPROMISE AND SETTLEMENT - 11

Law Offices of Anthony S.
Wisen, PLLC
2208 NW Market St., # 502
Seattle, WA 98107
206.418-8720 · tony@wisenlaw.com

In light of the forgoing, the resolution that is in the best interests of the creditors – including Dr. Sindi – is for the Court to deny the instant Motion, and to grant the Trustee's Motion to List Property.

## III.   CONCLUSION

Dr. Sindi recognizes the difficulties faced by the Trustees in this case, given the intransigent approach of Ms. El-Moslimany.  Her approach is unfortunately no surprise, given her misplaced loathing of Dr. Sindi.  But as the predominant creditor, Dr. Sindi asks that her voice be given equal (if not greater) weight than Ms. El-Moslimany, who is plainly determined to try to ensure that Dr. Sindi recover nothing (or as little as possible).

More importantly, settling with Ms. El-Moslimany is an objectively bad result for the creditors.   In contrast, granting the Trustee's Motion to List Property is likely to generate well more than $300,000 for the estates, in the short term, and without even taking the Al-Yousef adversary into account.

DATED this 11th day of June, 2021.

Law Offices of Anthony S. Wisen, PLLC
Attorneys for Hayat Sindi

By    */s/ Anthony S. Wisen*
    Anthony S. Wisen, WSBA #39656
    2208 NW Market St., #502
    Seattle, WA  98107
    Tel: (206) 418-8720
    Email: tony@wisenlaw.com

HAYAT SINDI'S OBJECTION TO MOTIONS TO APPROVE
COMPROMISE AND SETTLEMENT - 12

Law Offices of Anthony S.
Wisen, PLLC
2208 NW Market St., # 502
Seattle, WA  98107
206.418-8720 · tony@wisenlaw.com

Case 18-14820-CMA   Doc 174   Filed 06/11/21   Ent. 06/11/21 15:12:15   Pg. 12 of 13

**CERTIFICATE OF SERVICE**

I hereby certify that on June 11, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to those attorneys of record registered on the CM/ECF system.

DATED this 11th day of June, 2021

/s/  *Anthony S. Wisen*
Anthony S. Wisen, WSBA #39656

Law Offices of Anthony S.
Wisen, PLLC
2208 NW Market St., # 502
Seattle, WA 98107
206.418-8720 · tony@wisenlaw.com